### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JUAN FRANCISCO CASTRO,
an individual,

                                            Case No.:

        Plaintiffs,

v.

WESTGATE RESORTS LTD.,
a Floria limited partnership, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

        Defendants.

_____/

### COMPLAINT

**COMES NOW**, Plaintiff, JUAN FRANCISCO CASTRO (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, WESTGATE RESORTS LTD. (hereinafter, "Westgate") and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1.    This is an action for damages for Westgate's and Experian's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Defendants unlawfully reported erroneous and fictitious information on Plaintiff's personal consumer credit reports and credit files belonging to a third-party with a first name and last name similar to Plaintiff and continued

1

reporting such false and inaccurate information after Defendants received disputes from Plaintiff.

## JURISDICTION, VENUE & PARTIES

2.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*

3.      Defendants are both subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

4.      Venue is proper in this District as the alleged underlying account was created by an agreement allegedly entered into in this District, for a timeshare interest allegedly located in this District, and the acts and events described herein occur in this District.

5.      At all material times herein, Plaintiff is a natural person residing in Cook County, Illinois.

6.      At all material times herein, Westgate is a limited partnership existing under the laws of the state of Florida with its principal place of business located at 5601 Windhover Drive, Orlando, Florida 32819.

7.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCRA STATUTORY STRUCTURE

8.      Congress enacted the FCRA requiring consumer reporting agencies to

adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

9.      Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

10.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

11.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

12.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item

of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

13.   Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

14.   Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

15.   Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer

as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

## GENERAL ALLEGATIONS

16.     At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA because he is an individual and allegedly obligated to pay a debt.

17.     At all material times herein, Defendants are each a "person" as defined by 15 United States Code, Section 1681a(b).

18.     At all material times herein, Westgate is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

19.     At all material times herein, Westgate, itself and through its subsidiaries, regularly services timeshare debt accounts—and credit reports information associated with the same—from Orange County, Florida.

20.     At all material times herein, Westgate reports information concerning erroneous and fictitious information in the form of a tradeline account on Plaintiff's personal consumer credit reports and credit files belonging to a third-party or opened as a result of identity theft and fraud, referenced by account number ending -6236 (hereinafter, the "Account").

21.     At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in his name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any

good or services as a result of any transactions made using the Account.

22.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.

23.     Experian disburses such consumer reports to third parties under contract for monetary compensation.

24.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

25.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

26.     On or about August 20, 2015, individuals purportedly named Juan F. Castro and Angelia A. Rueda entered into an agreement with Westgate to purchase a timeshare interest.

27.     Plaintiff did not enter into the immediately-aforementioned timeshare agreement, did not execute the agreement, and did not authorize any other parties to enter into the agreement on Plaintiff's behalf.

28.     Furthermore, Plaintiff has no relationship with Angelica A. Rueda and has never met or known Angelica A. Rueda as of the date of this Complaint.

29.     On or about August 12, 2016, Westgate recorded a deed in the names of Juan F. Castro and Angelica A. Rueda with respect to the timeshare interest.

30.     In or around June 2023, Plaintiff was in the process of purchasing a home with his wife and applied for a mortgage loan.

31.     Plaintiff's mortgage loan application was denied due to information included in Plaintiff's credit reports.

32.     After Plaintiff learned he was denied, he obtained a copy of his credit report from Experian.

33.     To Plaintiff's surprise, Westgate and Experian reported a tradeline account (i.e., the Account) on Plaintiff's Experian credit report as belonging to Plaintiff and with negative, adverse, and late payment information on the Account.

34.     More specifically, Defendants reported the Account with a balance past-due in excess of $20,000.00, reported the Account with late payment history, and reported the Account as foreclosed.

35.     Upon information and belief, the Account reported by Westgate and Experian is the same Account opened by individuals named Juan F. Castro and Angelica A. Rueda.

36.     In other words, the Account does not belong to Plaintiff, Plaintiff did not agree to open the Account, Plaintiff did not sign any agreement to open the Account, and Plaintiff did not authorize anyone to apply for or open the Account in Plaintiff's name.

7

37. Notably, Experian also reported inaccurate personal information with respect to Plaintiff, specifically, an incorrect social security number, inaccurate addresses, and inaccurate name variations.

38. After Plaintiff learned of the Account reported by Westgate and Experian, Plaintiff contacted Westgate.

39. Through Plaintiff's communications with Westgate, Plaintiff advised that he did not apply for or open the Account.

40. In response, Westgate advised that the Account was opened using Plaintiff's social security number but under an address that never belonged to Plaintiff.

41. Additionally, during one phone call between Plaintiff and Westgate, Westgate's employee and/or representative advised that the Account did not belong to Plaintiff.

42. Following Plaintiff's communications with Westgate regarding the Account, Westgate provided documents to Plaintiff regarding the Account and showing the signatures of the individuals that opened the Account.

43. Plaintiff's signature does not appear on any documents related to the Account.

44. To the extent the Account was truly opened in Plaintiff's name using Plaintiff's personal information, such Account was opened as a result of identity theft and fraud.

45. In the alternative, Experian and Westgate reported the Account as

belonging to Plaintiff when it in fact belongs to a different Juan Castro, and Experian allowed the third-party Account to be reported on Plaintiff's Experian credit reports.

46.     No later than August 2023, Plaintiff was under contract to purchase a home and the closing date was originally set to occur in August 2023.

47.     However, the closing date was extended into September 2023 because Defendants' erroneous reporting of the Account prevented Plaintiff from being approved for a mortgage loan.

48.     Between approximately June 2023 and September 2023, Plaintiff repeatedly disputed Defendants' reporting of the Account to Experian, wherein Plaintiff advised that the Account does not belong to him and that Plaintiff could only presume the Account was opened as a result of identity theft and fraud.

49.     Experian communicated Plaintiff's immediately-aforementioned disputes to Westgate including all information and documents included with Plaintiff's disputes.

50.     Despite Plaintiff's disputes, Defendants continued to report the Account as belonging to Plaintiff.

51.     As a result of the repeated delays in the closing date, Plaintiff was prevented from closing on his desired home.

52.     On or about September 25, 2023, Plaintiff filed a police report with the Cicero, Illinois Police Department, identified by report number 2023-10000956 (hereinafter, "Police Report").

53.    In the Police Report, Plaintiff swore under oath that he was the victim of identity theft and fraud with respect to the Account because Plaintiff was told the Account was opened in Plaintiff's name with Plaintiff's social security number.

54.    On or about October 27, 2023, Plaintiff filed an Identity Theft Report Affidavit with the Federal Trade Commission (hereinafter, "ID Theft Affidavit").

55.    In the ID Theft Affidavit, Plaintiff *again* swore under oath that he has never owned a timeshare and asserted that the Account was fraudulently opened in Plaintiff's name.

56.    On or about November 27, 2023, Plaintiff obtained a copy of his Experian credit report.

57.    As of November 2023, Defendants still reported the Account as belonging to Plaintiff.

58.    Further, as of November 2023, Experian still reported inaccurate personal information with respect to Plaintiff, specifically, an incorrect social security number, inaccurate addresses, and inaccurate name variations.

59.    On or about November 30, 2023, Plaintiff sent a letter to Experian disputing Defendants' reporting of the Account (hereinafter, "November 2023 Dispute").

60.    More specifically, Plaintiff's dispute letter advised that Plaintiff believed the Account was opened in Plaintiff's name without Plaintiff's knowledge or consent, and as a result of identity theft and fraud.

61.     Plaintiff enclosed a copy of the Police Report, the ID Theft Affidavit, Plaintiff's driver's license, and proof of Plaintiff's address in support of his dispute.

62.     Experian received Plaintiff's November 2023 Dispute including all attachments.

63.     Experian communicated Plaintiff's November 2023 Dispute to Westgate including all attachments.

64.     Westgate received notice of Plaintiff's November 2023 dispute from Experian.

65.     Westgate received copies of all documents enclosed with Plaintiff's November 2023 Dispute from Experian.

66.     On or about December 28, 2023, Experian sent Plaintiff results of Defendants' investigations and re-investigations of Plaintiff's November 2023 Dispute.

67.     Despite Plaintiff providing the Police Report, ID Theft Affidavit, proof of address, and explanation that the Account does not belong to Plaintiff personally, Experian and Westgate purportedly "certified" their reporting of the Account and continued reporting the Account as belonging to Plaintiff personally.

68.     On or about December 28, 2023, Plaintiff also received a copy of his credit report from Experian.

69.     As stated above, Defendants purportedly verified their reporting and continued reporting the Account as "foreclosed" with a balance past-due in excess of $23,000.00 and with significant late payment history.

70.     As of December 28, 2023, Experian still reported inaccurate personal information with respect to Plaintiff.

71.     On or about March 6, 2024, Plaintiff sent another letter to Experian—with the assistance of his attorneys—wherein Plaintiff *again* disputed Defendants' reporting of the Account (hereinafter, "March 2024 Dispute").

72.     Plaintiff's March 2024 Dispute advised that Plaintiff was either the victim of identity theft and fraud, or Defendants were reporting the Account as belonging to Plaintiff when the Account in fact belongs to a different Juan Castro.

73.     Further, Plaintiff's March 2024 Dispute advised that, even if the Account did belong to Plaintiff—which it did not and does not—Defendants were reporting an inaccurate balance on the Account.

74.     More specifically, pursuant to Florida Statutes, Section 721.856, when a personal timeshare property is sold via a non-judicial trustee foreclosure, the sale "releases the obligor's liability for all amounts secured by the lien.  The lienholder has no right to any deficiency judgment against the obligor after a sale of the obligor's timeshare interest under this section."  Fla. Stat. § 721.856(8)(c).

75.     Here, Westgate sold the underlying timeshare interest (i.e., the Account) via a non-judicial trustee foreclosure no later than October 25, 2022.

76.     Because this timeshare Account property was sold via the non-judicial trustee foreclosure process, any debtors or alleged debtors were released from any financial obligation owed to Westgate on the timeshare Account— effective October

25, 2022 *at the latest*—pursuant to Florida Statutes, Section 721.856.

77.    Therefore, Defendants should not report any alleged deficiency balance owed on the Account any time after October 2022.

78.    In support of his March 2024 Dispute, Plaintiff enclosed a copy of the Police Report, the ID Theft Affidavit, Plaintiff's driver's license, and documents showing that Westgate sold the Account via non-judicial trustee foreclosure sale.

79.    Experian received Plaintiff's March 2024 Dispute including all attachments.

80.    Experian communicated Plaintiff's March 2024 Dispute to Westgate including all attachments.

81.    Westgate received notice of Plaintiff's March 2024 dispute from Experian.

82.    Westgate received copies of all documents enclosed with Plaintiff's March 2024 Dispute from Experian.

83.    On or about April 5, 2024, Experian sent Plaintiff results of Defendants' investigations and re-investigations of Plaintiff's March 2024 Dispute.

84.    Despite Plaintiff *again* providing the Police Report, ID Theft Affidavit, proof of address, and explanation that the Account does not belong to Plaintiff personally, Experian and Westgate purportedly "verified" their reporting of the Account and continued reporting the Account as belonging to Plaintiff personally.

85.    Moreover, despite Westgate selling the timeshare Account via non-

judicial foreclosure, Defendants continued to report the Account with a balance past-due in excess of $23,000.00.

86.     Experian failed to conduct reasonable re-investigations because Experian failed to review the facts presented in Plaintiff's repeated disputes and wholly ignored documents attached to Plaintiff's disputes in support of Plaintiff's assertions that the Account does not belong to Plaintiff personally and that the Account should not reflect a balance due.

87.     Westgate failed to conduct reasonable investigations because Westgate failed to review facts presented in Plaintiff's repeated disputes and wholly ignored documents attached to Plaintiff's dispute.

88.     As of the date of this Complaint, despite Plaintiff's repeated disputes, Experian and Westgate continue to maintain and report the Account as open with a significant balance past-due, as foreclosed, and with significant late payment information since March 2021.

89.     Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

90.     In 2023 and 2024, Experian generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders and such credit reports included Experian's erroneous reporting of the Account furnished by Westgate.

**DAMAGES**

91.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Experian and/or Westgate.

92.     As noted above, Plaintiff first learned of Defendants' reporting of the Account when Plaintiff jointly applied for a mortgage loan with his wife in 2023.

93.     Notably, in 2023, Plaintiff received an offer for a new job that would have increased Plaintiff's annual employment income.

94.     However, to accept the new job, Plaintiff needed to relocate closer to his new place of employment.

95.     Plaintiff and his wife sought to purchase a home in 2023 to relocate close to Plaintiff's new place of employment.

96.     No later than August 2023, Plaintiff was under contract to purchase a home closer to his new place of employment.

97.     However, Plaintiff was unable to close on the purchase because Plaintiff's mortgage applications were repeatedly denied due to the "foreclosure" Account reported by Defendants.

98.     As a result of being denied the mortgage application, Plaintiff was not able to close on the home and was not able to accept the new job offer.

99.     Further, expecting to relocate to their new home, Plaintiff's wife requested that her employer transfer Plaintiff's wife to a different employment

location, closer to Plaintiff's new place of employment.

100. Although Plaintiff's wife's employer approved the transfer, as a result of being denied the mortgage application, Plaintiff's wife could not accept the transfer position, and her old position had since been filled by her employer.

101. Plaintiff's wife was then transferred to another location, further from Plaintiff's current residence with his wife, and she now endures a longer commute despite no increase in pay.

102. Plaintiff's household has been severely impacted by Defendants' reporting errors.

103. Overall, as a result of the inaccurate reporting of the Account on Plaintiff's credit reports, Plaintiff was denied credit, lost an employment opportunity, lost income, incurred higher interest rates and less favorable terms on consumer loans and other consumer transactions—including the credit denial referenced above—and Plaintiff was continually evaluated for credit using consumer reports that inaccurately reported the foreclosed Account as belonging to Plaintiff with a significant balance past-due.

104. Additionally, as a result of Defendants' actions and inaction, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that despite the Account not belonging to Plaintiff, and despite Plaintiff's repeated dispute efforts, Plaintiff must simply endure Defendants' erroneous and inaccurate reporting of the Account.

105.    Plaintiff also dealt with the stress and anxiety of feeling hopeless and was deterred from further credit applications, believing that he would continue to be denied credit as a result of the erroneous and incorrect reporting of the Account and that Plaintiff would instead pay higher interest rates in the event he could obtain financing.

106.    In fact, Plaintiff suffered additional actual damages in the form of damage to his credit reputation, higher credit costs, and other additional costs and fees.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)
### (As to Westgate only)

Plaintiff re-alleges paragraphs one (1) through one hundred six (106) as if fully restated herein and further states as follows:

107.    Westgate is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to accurately report the Account on Plaintiff's credit reports after re-investigating Plaintiff's disputes.

108.    As described above, despite receiving notice of Plaintiff's disputes, Westgate willfully and/or negligently reported erroneous and inaccurate credit information regarding Plaintiff and the Account to Experian.

109.    Specifically, the Account does not belong to Plaintiff, Plaintiff did not agree to open the Account, Plaintiff did not sign any agreement to open the Account,

and Plaintiff did not authorize anyone to apply for or open the Account in Plaintiff's name.

110.    After Westgate received notice of Plaintiff's repeated disputes, which clearly advised Westgate that Plaintiff did not open or authorize the Account, Westgate continued to report the Account as belonging to Plaintiff personally, with a balance past-due in excess of $23,000.00, and with late payment history which ultimately reflected negatively and adversely on Plaintiff's Experian credit reports and credit file.

111.    Westgate continued its reporting despite admitting to Plaintiff that the Account does not belong to Plaintiff personally.

112.    Westgate failed to conduct reasonable investigations because Westgate failed to review facts presented in Plaintiff's repeated disputes and wholly ignored documents attached to Plaintiff's repeated disputes.

113.    Further, even if the Account did belong to Plaintiff personally—which Plaintiff unequivocally denies—Westgate *still* reported an inaccurate balance on the Account because Westgate sold the timeshare Account through a non-judicial trustee foreclosure and therefore was no longer entitled to any deficiency balance on the Account, whether owed by Plaintiff or any other party.

114.    Westgate's refusal to delete the Account and update the Account to remove any balance due or past-due was intentionally, willfully, and knowingly done.

115.    Westgate's re-investigations were not conducted in good faith.

116.    Westgate's re-investigations were not conducted reasonably.

117.    Westgate's re-investigations were not conducted using all information reasonably available to Westgate.

118.    As a result of Westgate's conduct, actions, or inactions, Plaintiff was denied credit, lost an employment opportunity, lost income, was deterred from further credit applications, incurred less favorable terms on consumer loans and other consumer transactions, and Plaintiff's household was similarly impacted by Westgate's conduct, actions, and inaction.

119.    Additionally, as a result of Westgate's actions and inaction, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that despite the Account not belonging to Plaintiff, and despite Plaintiff's repeated dispute efforts, Plaintiff must simply endure Westgate's erroneous and inaccurate reporting of the Account.

120.    Westgate's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

121.    Westgate's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitle Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Experian only)**

Plaintiff re-alleges paragraphs one (1) through one hundred six (106) as if fully restated herein and further states as follows:

122.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

123.    Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account and Plaintiff's personal information.

124.    Specifically, the Account does not belong to Plaintiff, Plaintiff did not agree to open the Account, Plaintiff did not sign any agreement to open the Account, and Plaintiff did not authorize anyone to apply for or open the Account in Plaintiff's name.

125.    The Account either belongs to a different individual named Juan Castro or the Account was opened in Plaintiff's name using Plaintiff's personal information but without Plaintiff's knowledge or consent.

126.    Although the Account does not belong to Plaintiff, Experian reported the Account in Plaintiff's Experian credit reports and credit file as Plaintiff's personal financial responsibility.

20

127.    Such reporting is false and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

128.    Furthermore, despite Experian receiving Plaintiff's repeated disputes—which clearly notified Experian that the Account did not belong to Plaintiff and was possibly opened as a result of identity theft and fraud and enclosed the Police Report and ID Theft Affidavit—Experian *still* failed to identify its reporting errors, purportedly "verified" its reporting of the Account, and *continued* to maintain and publish Plaintiff's Experian credit reports including the erroneous Account.

129.    Moreover, Experian reported inaccurate personal information with respect to Plaintiff, specifically, an incorrect social security number, inaccurate addresses, and inaccurate name variations.

130.    Experian's conduct constitutes a knowing and willful decision to report erroneous information belonging to a third-party on Plaintiff's consumer credit reports, as the above-referenced erroneous information indicates a mixed credit file between Plaintiff and a third-party, clearly demonstrating that such information should not have been reported on Plaintiff's credit reports.

131.    Experian's publishing of Plaintiff's highly sensitive and personal information to third-parties without a right or need to know such information increases the risk of identity theft and is the exact type of harm the FCRA is designed to protect.

132.    As a result of Experian's conduct, actions, and inactions, Plaintiff

suffered damage to his credit reputation and credit worthiness, was denied credit, lost an employment opportunity, lost income, was deterred from further credit applications, incurred less favorable terms on consumer loans and other consumer transactions, and Plaintiff's household was similarly impacted by Experian's conduct, actions, and inaction.

133.    Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Experian's derogatory and continued reporting of the Account, did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account that was not his.

134.    Additionally, as a result of Experian's actions and inaction, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that despite the Account not belonging to Plaintiff, and despite Plaintiff's repeated dispute efforts, Plaintiff must simply endure Experian's erroneous and inaccurate reporting of the Account.

135.    Furthermore, Plaintiff suffers ongoing actual damages because he fears that Experian will again allow information to appear on Plaintiff's credit reports in the future that does not belong to Plaintiff, as Experian has already done.

136.    Experian's conduct was a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

137.     Experian's violations of 15 United States Code, Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i</u>**
**(As to Experian only)**

Plaintiff re-alleges paragraphs one (1) through one hundred four (104) as if fully restated herein and further states as follows:

138.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1) by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments, and Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

139.     Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

140.     Specifically, the Account does not belong to Plaintiff, Plaintiff did not agree to open the Account, Plaintiff did not sign any agreement to open the Account,

and Plaintiff did not authorize anyone to apply for or open the Account in Plaintiff's name.

141.    The Account either belongs to a different individual named Juan Castro, or the Account was opened in Plaintiff's name using Plaintiff's personal information but without Plaintiff's knowledge or consent.

142.    Despite Experian receiving Plaintiff's repeated disputes—which clearly notified Experian that the Account did not belong to Plaintiff and was possibly opened as a result of identity theft and fraud and enclosed the Police Report and ID Theft Affidavit—Experian *still* failed to identify its reporting errors, purportedly "verified" its reporting of the Account, and *continued* to maintain and publish Plaintiff's Experian credit reports including the erroneous Account.

143.    Further, even if the Account did belong to Plaintiff personally—which Plaintiff unequivocally denies—Experian *still* reported an inaccurate balance on the Account because Westgate sold the timeshare Account through a non-judicial trustee foreclosure and therefore was no longer entitled to any deficiency balance on the Account, whether owed by Plaintiff or any other party.

144.    Experian wholly ignored documents submitted by Plaintiff with his disputes and continued to exclusively rely on information it received from Westgate regarding Plaintiff and the Account.

145.    The information Equiant furnished to Experian was either inaccurate or could not be reasonably verified by Experian because Plaintiff did not personally owe

a balance on the Account.

146.   Experian continues to report the Account with a balance past-due in excess of $23,000.00 as of the date of this Complaint.

147.   As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding the Account was inaccurate and Experian failed to subsequently update the inaccurate information in Plaintiff's credit reports and credit file.

148.   Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

149.   Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

150.   Experian's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by Westgate.

151.   Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

152.   Experian's reinvestigation procedures are unreasonable.

153.   Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

154.   Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes and the Account.

155.   As a result of Experian's conduct, actions, and inactions, Plaintiff were

denied credit, were deterred from further credit applications, and incurred less favorable terms on consumer loans and other consumer transactions.

156.   As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, lost an employment opportunity, lost income, was deterred from further credit applications, incurred less favorable terms on consumer loans and other consumer transactions, and Plaintiff's household was similarly impacted by Experian's conduct, actions, and inaction.

157.   Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Experian's derogatory and continued reporting of the Account, did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account that was not his.

158.   Additionally, as a result of Experian's actions and inaction, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that despite the Account not belonging to Plaintiff, and despite Plaintiff's repeated dispute efforts, Plaintiff must simply endure Experian's erroneous and inaccurate reporting of the Account.

159.   Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiffs to actual damages, statutory damages, punitive, damages, as well

as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiffs respectfully request an entry of:

a.   Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b.   Actual damages in an amount to be determined at trial;

c.   Compensatory damages in an amount to be determined at trial;

d.   Punitive damages in an amount to be determined at trial;

e.   An award of attorneys' fees and costs; and

f.   Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487

Sean E. McEleney, Esq., FBN 125561
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*